## COALE vs. HARRINGTON.—June, 1826.

A bill of sale of all the personal estate of the grantor passes whatever estate then belonged to him, and parol evidence is admissible to shew what that estate was.

Where it did not appear by the acknowledgment of a bill of sale before a justice of the peace, whether it was made by the grantor, or by whom it was made—*Held*, that such acknowledgment was defective, and that the bill of sale could not be recorded so as to make an authenticated copy of it evidence.

An authenticated copy of an instrument, improperly admitted to record, or not required to be recorded, is not competent evidence.

The act of 1763, *ch.* 13, requiring deeds of gift of slaves to be recorded only where the donors retain possession, a copy of such a deed, the original of which had been recorded, where the possession passed out of the donor at its execution, would not be evidence.

It is no error in an inferior court to refuse to give an opinion on an abstract proposition.

In an action of *Trover*, for slaves, in which the plaintiff claimed title under a bill of sale from F, the former owner, and the defence was, that F had afterwards manumitted them—*Held*, that the declarations of F, made between the date of the bill of sale, and the deed of manumission, that he had sold the slaves to the person under whom the plaintiff claimed, was competent evidence for the plaintiff.

Where the appellate court differ with the inferior court upon one of the defendant's bills of exceptions, and agree with them upon the rest, they will still affirm the judgment, if they think the merits of the case are against the defendant, and that there is proof properly received to enable the plaintiff to sustain his action.

APPEAL from *Baltimore* County Court. Trover for three slaves named *Julian*, *Alexander* and *Commodore*. Plea, *non cul.* and issue.

1. The plaintiff, (now appellee) produced and offered to read in evidence, at the trial, an authenticated copy of a bill of sale, taken from the records of *Queen Anne's* county, executed by *John Deford*, of *Queen Anne's* county, to *Thomas L. Deford*, dated the 12th of May 1806, and recorded in the records of the said county on the same day, whereby the said *John Deford*, in consideration of the sum of $400, granted, bargained and sold, unto the said *Thomas L.* his executors, &c. *all his personal estate of whatever kind or description.* The bill of sale was thus acknowledged: *"Maryland, Queen Anne's* county, to wit. On this twelfth day of May 1806, personally appeared before me, the subscriber, one of the justices of the

peace for the county aforesaid, and acknowledges the within writing to be his act and deed, according to the true intent and meaning thereof, and the act of assembly in such case made and provided.                    *William B. Hackett.*"

He also produced, and offered to read in evidence, an authenticated copy of another bill of sale from *Thomas L. Deford* to *Mary Ann Deford,* dated the 10th of April 1812, and recorded in the records of the county in which the grantor resided, the 20th of the same month, whereby *Thomas L. Deford,* in consideration of natural love and affection, &c. did give, grant and confirm, unto his granddaughter, *Mary Ann Deford,* daughter of his son *John Deford,* a negro woman called *Henny,* and her infant child called *Julian.* This bill of sale was duly acknowledged by *Thomas L. Deford,* on the 10th of April 1812. He also produced and read in evidence, with the consent of the defendant, (the appellant,) the depositions of *Charles Copper* and *Samuel N. Copper,* taken on the 7th of November 1823, before a justice of the peace, &c. *Charles Copper* deposed, "that *John Deford* owned a negro woman named *Henny,* which *Deford* told deponent he had sold, her and her child named *Julian,* with other property, to his father *Thomas L. Deford.* After this conversation, *John Deford* lived with deponent, and never had possession of said *Henny,* or her child, during *Thomas L. Deford's* life. *Henny* at this time had but one child named *Julian.* Deponent knows that the wife of the plaintiff is the daughter of *John Deford,* and the granddaughter of *Thomas L. Deford,* and her name was, before marriage, *Mary Ann Deford.* After *Henny* and her child became the property of *Mary Ann Deford, Henny* had two children, the eldest named *Alick* or *Alexander,* the other named *Commodore. Alick* was yellow, *Commodore* black. *John Deford* had possession of the children a short time before they came to *Baltimore,* and said he kept them for his daughter, to whom they had been given by her grandfather. *John Deford* was opposed to Mr. *Harrington* marrying his daughter, and said *Harrington* should not have the negroes if he could keep them from him. *Harrington* was married about three years last August or September. *John Deford,* being the father of Mrs. *Harrington,* acted as guardian for her, as deponent knows.

Every body considered these negroes as the property of Mrs.
*Harrington,* after *Thomas L. Deford's* death, and *John De-
ford* frequently boasted of his daughter's fortune in these ne-
groes.    Deponent saw *Alick* living with *Harrington,* but does
not know that the other negroes were ever in his possession.
*Alick* lived with *Harrington* some weeks—does not know that
it was a month.    *Alick* did not like to stay, and deponent be-
lieves he run away; but does not know it.    *John Deford* said,
if *Harrington* would be quiet, his intention was to let him have
one of the negroes."    *Samuel N. Copper* deposed, "that he
knows that *Thomas L. Deford,* being the owner of, and in pos-
session of the negro woman *Henny,* and her child *Julian,* the
subjects of controversy in this cause, executed a bill of sale of
them to his granddaughter, *Mary Ann Deford,* the now wife
of the plaintiff, about the year 1811 or 1812; that after such
transfer *Henny* had two children, *Alick* and *Commodore.
Alick,* or *Alexander,* was yellow, and *Commodore* black.
*John Deford* denied being the owner of these negroes, and de-
ponent paid the direct tax assessed on them to prevent their
being sold——*Mary Ann Deford,* the owner, being then a
minor, and living with her mother's connexions.    Deponent
saw *Alick* for some time in *Harrington's* possession in the fall
of 1820 or 1821.    The children, except the girl, were off and on
in the possession of *Harrington* after he married Miss *Mary
Ann Deford.*    They were married in August or September
1820.    *John Deford* always said the property was his daugh-
ter's."    The plaintiff further offered in evidence, by *Abraham
Hays,* a competent witness, that he procured a letter to be writ-
ten to the plaintiff, whom he had never seen at that time, di-
rected to the *Eastern Shore,* where witness understood said
plaintiff resided, informing him that there was a negro woman
of his in *Baltimore.*    That some time after, a person came to
*Baltimore,* calling himself *Richard Harrington,* and saying
that he had come to *Baltimore* in consequence of a letter he
had received from witness, in search of the negro woman men-
tioned in the letter; that witness then went with said *Harring-
ton,* and succeeded in finding said woman, and *Harrington*
soon after sold her to one *Anderson.*    That witness after-
wards went with *Harrington* to the defendant to demand the

negro children, who are the subjects of this action, and who witness understood were the children of the said negro woman. And that on *Harrington's* making said demand of the defendant, the defendant refused to give them up to *Harrington*, saying he should not have them without legal process, for he would punish *Harrington* for selling the mother of said negro children to *Georgia*. The defendant did not deny that *Harrington* was the person he represented himself to be. That the witness then went with the person aforesaid, to *John Glenn*, Esquire, an attorney at law in *Baltimore*. And it was admitted that *Glenn*, at the instance and request of said person calling himself *Harrington*, instituted the present suit in the name of said *Harrington*. The defendant then proved that *John Deford*, claiming to be the owner of the negroes named in the declaration, brought them with him in the steam boat to *Baltimore*, a few days before this action was brought; and offered evidence to prove, that the said *Deford* applied to the defendant, and requested him to take possession of the said negroes, alleging that they were his, and that the plaintiff was attempting to get possession of them for the purpose of selling them; and that the defendant took possession of them accordingly. He further offered evidence to prove, that *Henny*, the mother of the negroes in question, about the year 1812, and for some years after, lived in *Centreville*, and hired herself about, in different places, as a free woman. That some persons threatened to enforce the law against masters who suffered their slaves to go at large as free. That *John Deford* reclaimed *Henny*, and he, or his son for him, hired her to Mr. *Champlin*, in *Centreville*. He further offered evidence to prove, that *Henny* was always considered, in the neighbourhood where *John Deford* lived, as the property of said *Deford*. That this was the general reputation in the neighbourhood. That *Henny* was always called *Deford's Henny*—the said *Thomas L. Deford* being then dead. He further offered evidence to prove, that neither *Henny*, nor her children, were ever in the possession of the plaintiff until after 1820, when the defendant got possession of *Henny*, and sold her to a *Georgia* negro trader. That *John Deford* repeatedly declared that *Henny*, and her children, were his; that he bought them of a Mr. *Wilmer*, after the date of his said bill of sale of 1806,

to *Thomas L. Deford*, his father. The defendant then offered in evidence a deed of manumission, executed by *John Deford*, for the three negro children mentioned in the declaration, and dated the 18th of September 1821, whereby the said *Deford*, stating himself to be of the city of *Baltimore*, manumitted and set free his negro girl *Julian*, aged about ten years, his negro boy *Alexander*, aged about eight years, and his negro boy *Philip Commodore*, aged about four years, and giving to them immediate freedom. The deed was acknowledged by him on the same day before the defendant, being a justice of the peace of *Baltimore* county, and recorded the same day among the records of that county. It was admitted that the defendant, at the time he took possession of the negroes, was a justice of the peace for *Baltimore* county, and that he put one of them into the possession of a Mr. *Tyson*, another into the possession of an uncle of the child, and the third into the possession of one *Cowman;* and that neither the defendant, nor any of the said persons to whom he delivered the said three negroes, have ever claimed any right or title to them, but have always, since the date of the said deed of manumission, declared them to be free. The defendant then prayed the court to instruct the jury, that the aforesaid copy of the bill of sale from *John Deford* to *Thomas L. Deford*, was not a legal and valid bill of sale for the purpose of conveying a title to negro *Henny*, or her children, from the said grantor to the grantee. Which instruction the Court, [*Archer*, Ch. J.] refused to give. The defendant excepted.

2. The defendant further prayed the court to instruct the jury, that if they should believe from the evidence, that *Thomas L. Deford*, at the time he executed the said bill of sale to *Mary Ann Deford*, his granddaughter, did not retain the use and possession of the said negro *Henny*, and her children, mentioned in the said bill of sale to said *Mary Ann Deford*, then the copy of the said bill of sale, offered in evidence to the jury, was not legal evidence, and did not prove that the title to the said negroes passed from the said *Thomas L. Deford* to the said *Mary Ann Deford*. This instruction the court also refused to give. The defendant excepted.

3. The defendant further prayed the court to instruct the jury, that if they should believe, that when the demand was made upon the defendant for the delivery of the negroes, for which this suit was instituted, the defendant assigned as a reason for the nondelivery that he did not know that the plaintiff was the owner, or that he refused to deliver them upon the ground that he did not know to whom they belonged, and that he therefore kept them until the right should be ascertained, then the demand and refusal stated in the preceding bill of exceptions, is no evidence of conversion, unless the defendant has since sold, or otherwise converted the said negroes to his use; and that the jury must find a verdict for the defendant. This direction the court gave. The plaintiff excepted.

4. The defendant further prayed the court to instruct the jury, that upon the whole of the evidence, the plaintiff was not entitled to recover. Which instruction the court refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Raymond*, for the Appellant, contended, 1. That the bill of sale from *John Deford* to *Thomas L. Deford*, a copy of which was given in evidence, was a void instrument, and conveyed no title. It was general for all his personal estate, of whatever kind or description. To show, therefore, what property passed, parol evidence must be gone into, and such evidence was not admissible, because it varied the written contract. *Wain vs. Warlters*, 5 *East*, 10. *Batturs vs. Sellers & Patterson*, 6 *Harr. & Johns.* 249.

2. That it was not duly acknowledged by *John Deford*, and therefore that a copy was improperly admitted in evidence. That it could not be presumed, it not being so stated, that *John Deford* acknowledged it, and unless he did, it was not a valid instrument.

3. That the parol evidence offered by the plaintiff below in explanation of the bill of sale, to show what negroes passed under it, was illegal, and ought not, therefore, to have been re-

ceived by the court. The hearsay evidence of *John Deford*, who was not proved to be dead, though whether alive or dead would make no difference, was admitted by the court. If he was a competent witness he ought to have been produced at the trial, or his testimony legally taken.

4. That a copy of a bill of sale was not legal evidence, except where the grantor retains possession of the property sold. *Dorsey vs. Gassaway*, 2 *Harr. & Johns.* 402.

*R. Johnson*, for the Appellee. 1. It is every day's practice for a man to convey or devise his whole estate, either real or personal, and often both. And until now it was never seriously said that the grantee or devisee could not go into parol evidence to prove what was granted or devised to him.

2. The bill of sale in question comes under the act of 1729, ch. 8, *s.* 5, which requires that it should be acknowledged and recorded, where the property is retained by the grantor. It is not said what shall be the form of acknowledgment. There is no form prescribed. Here it appears that the bill of sale was acknowledged, but it is not stated to have been done by *John Deford*—who but *John Deford* could acknowledge it? It is stated to be executed by him, and the presumption is irresistible that he did acknowledge it. It was not objected to when it was offered in evidence, and no advantage can be taken of it now. *Carroll et al. Lessee vs. Norwood*, 4 *Harr. & M'Hen.* 287. The prayer was a special one for the court's direction, which differs the case from *Hall vs. Gittings's Lessee*, 1 *Harr. & Johns.* 27

3. If the parol evidence was illegal, yet it was not excepted to. The defendant's prayer admitted the evidence, and the opinion of the court below was asked upon the whole of the evidence. In the *second* bill of exceptions, the appellant takes advantage of the testimony, and under the *fourth* bill of exceptions he attempts to impeach it. The declarations of *John Deford* were legal evidence, both parties claiming under him. It is too late to except now to evidence, which was admitted to go to the jury.

4. In *Dorsey vs. Gassaway*, 2 *Harr. & Johns.* 402, the opinion of the general court was not excepted to, and no decision

on that point was had in this court.   The question, therefore, is open for this court.   It was for the defendant below to prove that possession of the property was delivered to *Thomas L. Deford,* and then to call upon the court to say that a copy of the bill of sale was not evidence.

BUCHANAN, Ch. J. delivered the opinion of the court.   This is an action of trover, by the appellee, who was plaintiff below, for three negroes, which he claims in right of his wife, and comes up on *three* bills of exceptions taken at the trial by the appellant; on the *first* of which three objections are raised to the opinion of the court below.

*First.* That the bill of sale from *John Deford* to *Thomas L. Deford,* was void for uncertainty.

*Secondly.* That it could not be explained by parol evidence; and

*Thirdly.* That it was not duly acknowledged, and therefore that the copy was not competent evidence.

The *first* and *second* objections there is some difficulty in understanding.   The bill of sale is of "all the vendor's personal estate, of whatever kind or description."   Now, what uncertainty there is in this, is not easily perceived; the negroes in question are not indeed named in the bill of sale; but surely if they constituted a part of the personal estate of the vendor, they were embraced by a grant of the whole, unless it can be supposed, that a grant of the whole may not include a part. And if the bill of sale was in itself good and effectual to pass property of that description, the only matter of inquiry was, whether the negroes in question did in fact constitute a part of the personal estate of the vendor?   But here the *second* objection is started, that the evidence, offered to show that they were a part of the personal estate of *John Deford,* was improperly admitted, on the ground that parol evidence cannot be received to explain a written contract.

It is a general rule of law, that parol evidence cannot be admitted to contradict, add to, or vary the terms of a written instrument.   But that rule has no kind of application to this case; the parol evidence offered and received, was not to contradict, add to, or vary the terms of the bill of sale; it was not

to show, that a part passed by a grant of the whole, or to explain what was meant by the words "all my personal estate of whatever kind or description," but only to identify the negroes, and to show that they did constitute a part of the personal estate of *John Deford,* at the time of making the bill of sale, and was for that purpose properly admitted.

The *third* objection, that the bill of sale was not duly acknowledged,. and the copy therefore improperly admitted in evidence, is of a different character.

The act of 1729, *ch.* 8, *s.* 5, requiring sales, &c. of goods and chattels, in certain cases to be in writing, also requires that writing to be acknowledged and recorded. By the office copy, which was offered in evidence, of the bill of sale from *John Deford* to *Thomas L. Deford,* it does not appear that that paper ever was duly acknowledged; the endorsement on the back of it does indeed purport to be a certificate of acknowledgment before a justice of the peace, but by whom the acknowledgment was made is not stated. It was probably an acknowledgment by *John Deford,* the vendor, and his name omitted by negligence or accident; but to receive such an imperfect instrument as a due acknowledgment of a deed, might lead to a dangerous laxity in practice, and furnish a precedent of mischievous tendency. It is not, therefore, as to this point, material to inquire, whether under the facts and circumstances of the case, the sale by *John Deford* to *Thomas L. Deford,* was by the act of 1729, ch. 8, required to be by writing acknowledged and recorded; if it was, the bill of sale, not being duly acknowledged, it was improperly admitted to record, and the office copy ought not to have been admitted in evidence; and if it was not required to be recorded, the office copy was equally incompetent testimony, the recording of a paper not required by law to be recorded, not having the effect to dispense with the production of the original, and to make a copy legal evidence.

The bill of exceptions is badly worded, but the prayer set out must be considered as an application to the court for the opinion, that the copy offered in evidence of the bill of sale, was not evidence of a transfer of title to the negroes from *John Deford* to *Thomas L. Deford,* which opinion the court ought to have given.

The only question raised upon the *second* bill of exceptions is, whether in the case of a gift of negroes, where the donor does not retain possession, an office copy of a bill of sale is evidence of title in the donee? -

By the act of 1763, *ch.* 13, a gift of negroes is only required to be by deed, acknowledged and recorded, where the donor retains possession; and that solemnity not being authorised or required by law, when the possession passes to the donee by delivery, at the time and in pursuance of the gift, an office copy, in such case, of a bill of sale, is not competent evidence to prove title in the donee.

But that question does not properly arise in this case; the proof is, that *Thomas L. Deford* was in possession of the negroes at the time of executing the bill of sale to *Mary Ann Deford*, his infant granddaughter, now the wife of the appellee; and there is not one word of evidence to show, that he parted with the possession at the time; on the contrary, the natural and almost necessary inference would be, considering the sex, age, and situation of the donee, that he did not. The application, therefore, to the court to direct the jury, that if they should believe from the evidence that *Thomas L. Deford*, at the time he executed the bill of sale to *Mary Ann Deford*, did not retain the use and possession of the negroes mentioned in it, the office copy of the bill of sale, which was offered in evidence, was not legal and competent testimony, was upon an abstract proposition, not warranted by, nor founded upon, the evidence in the cause, and the court did right in rejecting the prayer.

The *last* bill of exceptions was taken to the refusal of the court to direct the jury, that upon the whole of the evidence the plaintiff below was not entitled to recover; in which refusal the court was clearly right. The proof on the part of the plaintiff below was shortly this; that the negro woman named *Henny*, and her daughter *Julian*, were formerly the property of *John Deford*; that he frequently acknowledged he had sold them to his father *Thomas L. Deford*, to whom the use and possession were transferred; and that *Thomas L. Deford* transferred them, by bill of sale, to his granddaughter *Mary Ann Deford*, the daughter of *John Deford*, now the wife of the plaintiff below; and that *Alexander* and *Commodore* are

also the children of *Henny*, born after the execution of the bill of sale from *Thomas L. Deford* to *Mary Ann*. The defence was founded on a deed of manumission of the negroes, for whom the suit was brought, executed by *John Deford*, since the marriage of his daughter. The proof, therefore, of his acknowledgments anterior to the deed of manumission, that he had sold *Henny* and *Julian* to his father *Thomas L. Deford*, and also that the whole of the negroes in question belonged to his daughter, to whom they had been given by his father, was properly admitted in evidence; and the court could not have given the direction prayed, without usurping the province of the jury, and deciding the question of right between the parties, contrary to the testimony in the cause.

Upon the whole, we concur in opinion with the court below, on the *second* and *last* bills of exceptions, but dissent from the opinion expressed in the *first* exception. That dissent, however, furnishes no ground for a reversal of the judgment; the merits of the case are clearly against the appellant; and if the copy, which was offered in evidence, of the bill of sale from *John Deford* to *Thomas L. Deford* had been rejected, there was proof enough without it to sustain the action.

JUDGMENT AFFIRMED.