## PRATHER vs. JOHNSON, et al.

Where the sureties of W deceased, late a collector of public taxes, were compelled, as such, to pay the amount due from the collector to the state, and for their reimbursement, an act of assembly authorised them to bring suits against persons owing taxes, in the same manner as W might—*Held*, that as W could have brought suits and recovered on proof of the taxes being due, and that they were paid by him to the state, the sureties could do the same; and that it was of no consequence whether the sureties all together paid, or only one of them paid, or the collector had paid, for by substitution they stood in the place of the collector.

If A, as surety of B, pays a debt due to C, on proof of the payment, A could recover of B, and an oral or written acknowledgment by C, of the payment, would be evidence in the suit against B.

When an act of assembly directs that the certificate of a public officer shall be evidence, a paper produced with his name will be evidence *prima facie* unless the name is proved not to have been signed by him, as where a paper, purporting to be an account made out by T H, as treasurer of the W D, and signed by him, and by him sworn to before a justice of the peace, with a certificate of the clerk of the county that such person was a justice, &c. was permitted to be read in evidence, under the act of 1794, ch 193.

ERROR to *Prince-George's* County Court. This was an action of *assumpsit*, brought on the 3d of August 1796, for money laid out and expended. The defendant (now plaintiff in error,) pleaded *non assumpsit*, and *non assumpsit in fra tres annos.*

1. At the trial the plaintiffs, (the defendants in error,) proved that *Thomas Williams*, deceased, was collector of

the public taxes for *Prince-George's* county for the years 1780, 1781 and 1782; and that the defendant was indebted for taxes and public dues for the years 1781 and 1782, the different sums of money stated to be due from him in the account exhibited. They then read in evidence the two acts of assembly of 1784, *ch.* 43, and 1785, *ch.* 33, authorising and empowering the securities of *Thomas Williams*, deceased, late collector of the tax and public dues in *Prince-George's* county, to complete the same. They also proved that they were the persons mentioned in the said acts of assembly as the securities of the said *Williams* with *R. Smith*, in said acts also mentioned, who was since dead. They then offered to prove that the said taxes and public dues, for the years 1781 and 1782, for which the defendant was indebted, together with all the taxes and public dues for the years 1780, 1781 and 1782, for *Prince George's* county, were paid into the treasury by the said securities of *Thomas Williams*; and they read to the jury a paper purporting to be an account made out by *Thomas Harwood*, as treasurer of the *Western* shore, and signed by him, and by him sworn to before a justice of the peace for *Anne-Arundel* county, on the 12th of September 1799, with a certificate of the clerk of that county court, that the person who took the affidavit, was a justice of the peace, &c. The defendant then offered to prove, that *John Waring*, one of the plaintiffs, together with the said *R. Smith*, were securities for the said *Williams*, for the collection of the taxes and public dues of the year 1780; that *J. S. Brookes* and *T. Harwood*, two other of the plaintiffs, were securities for the said *Williams* for the collection of the taxes and public dues of the year 1781, and that *R. Johnson* and *E. Berry* were the securities for the said *Williams* for the year 1782, and that they did respectively execute for that purpose the several bonds produced, together with the said *Williams*, as they respectively purport to have been executed. He then offered to prove, that *J. Waring*, one of the plaintiffs, had not paid any money, or other thing, to the state, or to any person authorised to receive it, for or on account of any taxes or public dues for the years 1781 and 1782, for which the defendant was liable, or on account of any other taxes or public dues in those years, nor had any person for the said *Waring*, or at his request, made such payment. He then prayed

the direction of the court to the jury, that if the jury should be of opinion, from the evidence, that *J. Waring*, one of the plaintiffs, had not paid any sum to the state for or on account of any taxes or public dues for the years 1781 and 1782, for which the defendant was liable, or for any other taxes or public dues for those years, and if no other person had made such payment for the said *Waring,* or at his request, that then the plaintiffs were not entitled to recover. But the Court, [*Stone,* Ch. J.] refused to give the direction. The defendant excepted.

2. The defendant then objected to the paper herein before mentioned, purporting to be an account made out by *T. Harwood*, as treasurer of the western shore, being read in evidence. But the court overruled the objection, and permitted the paper to be read in evidence. The defendant excepted; and the verdict and judgment being against him, he prosecuted the present writ of error.

The cause was argued before CHASE, Ch. J. and NICHOLSON, EARLE and JOHNSON, J.

*Shaaff*, for the Plaintiff in error, contended, 1. That a joint *assumpsit* to the plaintiffs below was laid in the declaration, and that there was proof that there could be no *assumpsit* to *J. Waring*, as he paid no money, and therefore he could not sue. He referred to *Ott vs. Chapline*, 3 *Harr. & M·Hen*. 323, and *Goldsmith's Adm'r. vs. Pattison's Ex'r.* 1 *Harr. & Johns.* 205.

2. That the account stated by the treasurer to be copied from the treasury books, was not evidence, because there was no proof that *T. Harwood* was the treasurer, nor was his signature to the account proved. That the probat to the account, that it was truly copied from the books of the treasury office, was not according to the act of 1798, *ch.* 108, that act requiring that the account should be attested by the treasurer, and sworn to be a true copy by the person attesting it, and there was no proof that he did attest it. It also says, that the account proved according to that act shall be evidence in the same manner, and to have the same effect, as if the original books, &c. were themselves produced, and in this case if the books had been produced, they would not of themselves have been evidence.

No Counsel argued for the Defendants in error.

**1814.**

Scholls
vs
Shriner

Johnson, J. The sureties of *Williams* were compelled as such, to pay the money due from him to the state, and for their reimbursement the acts of assembly authorised them to bring such suits as *Williams* might—now *Williams* could have brought a suit, and recovered on the proof of the taxes having been due, and that they were paid by him to the state. The securities then can do the same; and it is of no moment whether they all together paid, or one of them paid, or the collector paid, for by substitution they stood in his place.

If A as surety for B, pays a debt due to C, on the proof of the payment, A could recover of B. He could recover on C's saying A had paid, and of course if C *wrote* that A had paid, surely it is evidence whether the writing was in a book or a letter.

When an act of assembly directs the certificate of a public officer to be evidence, a paper produced with his name will be evidence *prima facie*, unless the name is proved not to have been signed by him.

JUDGMENT AFFIRMED.