[PHILADELPHIA, MARCH 30, 1832.]

GIBBLEHOUSE and Another *against* STONG.

IN ERROR.

The declarations of a person while holding the legal title to an estate, that he was merely a trustee for another, who had paid the purchase money, are admissible in evidence against those claiming under him, although he be, at the time such declarations are offered in evidence, in full life, within the reach of the process of the court, and capable of being examined as a witness.

THE record of this case having been returned on a writ of error to the court of Common Pleas of *Montgomery* county, accompanied by a bill of exceptions to the rejection of evidence by the court below, it appeared that *Frederick Stong*, the defendant in error, brought an ejectment against the plaintiffs in error, *John Gibblehouse* and *John Brandt*, to recover two lots of ground in *Whitpain* township, one of them containing three quarters of an acre, with a dwelling house, and other buildings erected on it, and the other containing five acres. The plaintiff below claimed under a deed dated 1st of *April*, 1813, from *David Johnson*, in whom it was admitted the legal title to both the lots was vested, one of them by deed dated the 1st of *April*, 1811, from *S. Slingluff*, and wife, the other by deed dated the 13th of *May*, 1811, from *Samuel Ashmead* to him. *Gibblehouse* was the tenant of *Brandt*, who alleged that *David Johnson* was the mere trustee of his brother *Edward Johnson*, for whose use he held the legal title to the lots in dispute, and that he, *Brandt*, had purchased them as the property of *Edward Johnson* at a sheriff's sale under an execution upon a judgment obtained by *Brandt* against *Edward Johnson.*

On the trial of the cause in the court below, after a variety of testimony had been given by both parties, which will be found stated in the dissenting opinion delivered by Judge HUSTON, *George Gregor* was produced and affirmed as a witness, for the plaintiffs in error. He testified as follows : " *Edward Johnson* bought the three quarter acre lot from *Slingluff. David Johnson* and *Edward Johnson* told me so." The counsel for the plaintiff below, then objected to his evidence, when the defendants counsel offered to give in evidence, " declarations made by *David Johnson*, after the purchase of the property in dispute from *Slingluff* and *Ashmead*, and while he held the legal title to it, and before it was afterwards sold to any one, that he had never paid any part of the purchase money, but that he held the title for the property as the trustee of *Edward Johnson*, and that *Edward Johnson* had paid the purchase money for it.". To this

(Gibblehouse and another *v.* Stong.)

evidence the counsel of the plaintiff below objected, upon which the court decided " that the witness could not give any evidence of any declarations made by *David Johnson*, unless such declarations were made at the time or immediately before, or immediately after, the execution of the deeds to him, or by him to the plaintiff *Frederick Stong*, or in the presence of the opposite party ; the said *David Johnson* being a competent witness, and from any thing which appears to the contrary, in full life, and within the reach of the process of the court." ·

To this opinion the counsel of the defendant below excepted, and assigned it for error in this court.

The cause was argued by *T. Sergeant* for the plaintiff in error, and by *Kittera* for the defendant in error ; after which

The opinion of the Court was delivered by

Rogers J.—The declarations of a person, while in the possession of the premises, against his title, are always admissible, not only against him, but against those who claim under him.   The general principle is conceded ; but with this qualification, that when the person whose acknowledgment is relied on is alive and a competent witness, that then he must be examined : that his declarations cannot be received. I have examined all the cases, and I cannot perceive a trace of any such exception.   In most cases it is true the party was dead, and this is usually the case in ·fact, for it is the declarations of an ancestor that are most commonly offered in evidence.   It has in no case however been made a subject of inquiry whether the person was dead or alive, a competent witness or otherwise, and this surely would have been the case had any such qualification of the general rule existed.   The reason of the rule is at war with the exception.   The point falls within the well established principle that although a man's declarations are not evidence for him, they are strong evidence against him. The principle is founded on a knowledge of human nature.   Self interest induces men to be cautious in saying any thing against themselves, but free to speak in their own favour.   We can safely trust a man when he speaks against his own interest.   It it is not conclusive, but is unquestionable evidence, entitled to some weight against himself, and those who claim under him. *Bassler* v. *Neisly* et al. 2 *Serg. & Rawle*, 353.   The defendant's counsel offered to prove declarations made by *David Johnson*, after the purchase from *Slingluff* and *Ashmead*, and before the sale of the property to any person, that he, *David Johnson*, never paid any part of the purchase money, but that he held the title as trustee for *Edward Johnson*, and that *Edward Johnson* had paid the purchase money for it.   The court decided that the witness could not give any evidence of any declarations made by *David Johnson*, unless such declarations were made at the time, or immediately before, or immediately after the execution of the deeds to him, or by him to the plaintiff, or in the presence of the opposite party : *David Johnson* being a competent witness, and from

(Gibblehouse and another *v.* Stong.)

any thing which appears to the contrary, in full life, and within reach of the process of the court. Suppose this declaration had been in writing, can *David Johnson* by a subsequent conveyance, prevent the party in whose favour the declaration was made, from giving it in evidence against the party who claims under him? And where is the difference between written and parol testimony, except in the certainty ; and particularly in cases of personal property, which may pass by parol, and to which the principle also applies? Can it be that the party is forced to rely upon the testimony of *Johnson,* who it may be has assigned for the purpose of getting rid of his own admissions? If the defendant must examine *Johnson* they must hear their witness and cannot afterwards discredit him. They will in fact be utterly precluded from the testimony by the act of *Johnson,* and that this cannot be done is decided in *Long* v. *Bailie* Indorsee of *Buchannan,* 4 *Serg & Rawle,* 222. The defendant acquires an interest in testimony, of which he cannot be deprived by the act either of a witness or a party. The distinction is taken between an interest cast upon him by operation of law, and an interest acquired by the act of the witness himself.

Whether the admission of the testimony will vary the result is not now the question.

We think there was error in rejecting the testimony, and that the judgment should be reversed.

Huston J.—The only error assigned in this record is contained in a bill of exceptions to the opinion of the court in rejecting certain testimony. To understand the matter decided, it will be necessary to state what was the matter trying, and what had been proved.

*Frederick Stong* brought an ejectment to recover a house and three quarters of an acre of land (describing it), and also five acres used and occupied with the three quarters of an acre ; and he deduced title to the house and lot on which it stood, by a deed, of 1st *April,* 1797, *John Dutterer* and wife, to *S. Slingluff,* and deed of 1st *April,* 1811, *Samuel Slingluff* and wife, to *David Johnson,* and deed of 1st *April,* 1813, *David Johnson* to *Frederick Stong.* the plaintiff, and he proved possession, first, in *Dutterer,* then in *Slingluff,* then in *Edward Johnson,* and proved and read a lease from *Frederick Stong* to *Edward Johnson,* dated shortly after *Stong's* purchase ; he then proved the payment of money, which was contained in two bags; the amount witness could not state. He also traced title to the five acre lot ; 1st *April,* 1795, deed *John Doll* and wife to *John Wood.* 4th of *August,* 1808, deed *John Wood* to *William McDowell.* 2nd of *April,* 1810, deed *William McDowell* to *Samuel Ashmead.* 13th of *May,* 1811, deed of *Samuel Ashmead* to *David Johnson.*

It was proved that *Edward Johnson* lived in the house and occupied both lots from 1811 till 1827. That in the neighbourhood many considered him the owner : That he built a weaver's shop, being a weaver, and a stable and a threshing floor at the end of it, and plant-

(Gibblehouse and another *v.* Stong.)

ed some fruit trees. *Edward Johnson* was the brother of *David Johnson*, and was married to a sister of *Stong* the plaintiff. The defendant then showed the record of a judgment, *John Brandt* v. *Edward Johnson*, in 1823, execution and proceedings ending in a sale of the premises to *Brandt*. Then an ejectment, *John Brandt* v. *Edward Johnson*, of *August*, 1826, and a judgment and *hab fa. possessionem* executed, on which *Gibblehouse* was put into possession as tenant of *Brandt*.

The defendants called *S. Slingluff* who had sold and conveyed the house and lot to *David Johnson*. He proved that the bargain was made between him, and *Edward* and *David Johnson* : That *Edward* was at the time his tenant in this house, but had been broken up by his creditors, and all he had sold by them : That he made the bargain with them both ; part was to be paid at signing the articles, part at signing the deed, and to get judgment bonds, and mortgage for the residue : That, when the articles came to be written, and the deed and mortgage and bonds, all were in the name of *David Johnson* alone : That *David* lived at some distance, and the witness seldom saw him : That the first and second payments were made by the hands of *Edward Johnson ;* when the mortgage fell due *Frederick Stong* paid one hundred pounds of it, and the rest came from *Edward Johnson* : That the witness did not know whether *David* exercised any acts of ownership, nor whether *David* or *Edward* actually paid for the buildings. The defendants also called *Samuel Ashmead*, who conveyed the five acre lot to *David Johnson*. He proved that he made the bargain with *Edward*, and was paid through *William M'Dowell :* That he never spoke to or saw *David Johnson* about it : That he conveyed to *Edward* and not to *David*, but on being shown his own deed to *David*, said he had been mistaken, and made some other explanations. I do not pretend to have stated all the testimony minutely, but enough to show that the matter trying was whether *David Johnson* had ever been owner, or a naked trustee for *Edward*, and next whether *Stong* was the purchaser from *David* in his own right, or as a trustee, in whole or in part for *Edward ;* whether if *David* was a trustee, *Stong* purchasing on the faith of a deed, in fee simple, was not safe as an innocent purchaser without notice, from one appearing to have the fee simple ; or whether he had notice of the trust, and so became himself a trustee for *Edward*. In this stage of the cause, the defendants called a witness who commenced by saying, " *Edward Johnson* bought the house and three quarters of an acre from *Slingluff*. *Edward* and *David Johnson* both told me so"—and was stopped from proceeding further. On a call by the plaintiff's counsel, the defendant's counsel said, we mean to prove by this witness, " declarations made by *David Johnson* after the purchase from *Slingluff* and *Ashmead*, and before the sale by *David Johnson*, that *David* never paid any part of the purchase money, but that he held the title as trustee for *Edward*, and that *Edward* paid the purchase money for it." To this the plaintiff's counsel ob-

jected, and the court decided that the witness could not give any evidence of any declaration made by *David Johnson,* unless it were made at the time, or immediately before or after the execution of the deed to him, or by him to the plaintiff *Frederick Stong,* or in the presence of the opposite party, he, *David Johnson,* being a competent witness, in full life, and within reach of the process of the court. To this exception was taken; and I see no error, at least against the defendants. It has been contended that by a series of decisions in this state it is settled, that the declarations of a former owner of property, made while he was owner, are evidence against the party claiming under him; and that this rule is universal, and applies to cases where such former owner is alive, is entirely disinterested in the matter trying, and is standing in court and there is no objection to examining him as a witness. On the other hand it is contended, that the rule is not universal: That declarations of a former owner are only evidence to establish boundary, pedigree, and custom: That it does not extend to permit parol evidence to contradict written and recorded deeds, and destroy titles good by such deeds, and proved by those who never heard of such parol declarations: and at all events it is limited to cases in which the person whose declarations are proved is interested, and cannot be examined, or is dead, or out of the reach of the process of the court; but that if he is alive, in court, or can be brought there, and is totally disinterested, he must be examined on oath, an opportunity given to cross-examine, and his declarations not on oath, are not in such case to be proved; and that the statute of frauds forbids that a title depending by law on written and recorded deeds, should be destroyed by parol evidence of parol declarations, which may have been made, or may not, and which if made, did not at all affect the rights of him who uttered them, except as to those who may have purchased on the faith of such declarations.

It is the safest rule to consider general expressions as applied to the case trying, and if they are true in that case it is not necessary that the court should lay down all the exceptions. This can be done as cases occur requiring such exceptions to be noticed. Boundary, as used in law proceedings, includes the extent of possession, and who was in possession of the *locus in quo;* it also includes questions of where a survey was laid, especially if alleged that its location has been changed.

The cases cited by the plaintiff are, 2 *Dall.* 93. In an ejectment against a widow, evidence that her husband in his lifetime admitted he was the tenant of the plaintiff was admitted. He might have been tenant from year to year, and this proof of parol tenancy did not impair the effect of the statute of frauds.

*Bassler* v. *Niesly,* 2 *Serg. & Rawle,* 354. The defendant in ejectment claimed by a parol contract with the father of the plaintiffs, and money paid and possession delivered; to prove the contract, the admissions of the deceased father of the plaintiffs were proved. This was to make the case an exception out of the statute of frauds.

(Gibblehouse and another *v.* Stong.)

*Wiedman* v. *Kohr*, 4 *Serg.* & *Rawle*, 174. One of the parties in an ejectment claimed under a very old warrant, on which for a long time no survey was made, or if made, was not returned (see this case fully reported in 13 *Serg. & Rawle.* 17.) Evidence was offered to prove that a former owner of this warrant, while he was owner, admitted that it was not surveyed on the land in question, and the court below rejected the evidence, and this court reversed the decision for this reason, " We may safely admit the declarations of a man against his own interest, as no one ordinarily makes such admissions ;" and this opinion, and the reasons for it, are the reliance of the plaintiff so far as relates to our own decisions. It is a very short note of the case. It was clearly an admission as *to boundary*, at a time too when no deed, and no survey returned and filed, were contradicted by the admission. It does not appear whether the former owner whose declarations were proved, was dead or alive, nor whether he was within reach of process of the court, or whether he was disinterested and so a witness, or not ; it is therefore not of much force, as I shall show we have several other cases not cited, in most of which the person whose declarations were proved was dead, and none in which he appears to have been alive *and disinterested.* In *Strickler* v. *Todd*, 10 *Serg. & Rawle*, 63, the decision of the Common Pleas was reversed, among other things, because declarations of former owners respecting a *water right* were rejected. By this case, all those whose declarations were offered to be proved were dead ; and further, a parol license to use the water forty years ago, was held to be now as good as a deed.

The opinion of the court in all the cases cited, and most if not all those in our reports which I have found, were delivered by the late Chief Justice. And in *Buchanan* v. *Moore*, 10 *Serg. & Rawle*, 275, the same judge in delivering the opinion of the court says, quoting *Phillips' Evidence*, " In all cases which have been mentioned on this subject (parol evidence of declarations) the person who made the declaration *was deceased* at the time of trial ;" and he adds, " there is great reason for the law being so held. Why should the declarations without oath of a person who may be produced and examined on oath, be evidence ? Why should the party against whom the evidence is offered be deprived of the opportunity of cross-examining ? In the case of death there is a necessity. But while the witness is living there is no pretence for dispensing with the general rule which rejects all testimony except on oath, and in the presence of the parties to the suit." This opinion is not inconsistent with any of the former cases, but mentions a circumstance (that the party was alive and not interested) not brought into the view of the court in the former cases, and I know of no answer to the conclusion to which the court came.

I have looked at some *New York* cases founded on *Davies* v. *Pierce et al.* 2 *Durnford & East*, 53, in which the subject proved was, under whom the persons, long since dead, had stated they held the land.

1 *John.* 348, was what a deceased person said as to whether she

(Gibblehouse and another *v.* Stong.)

held personal property as her own, or in right of her son, and decided on the authority of the last case.—4 *John.* 230.   The declarations of a former owner were admitted, and it does not appear whether the owner was dead or not, or interested or not.   It is a short case, and the court say it is governed by the two cases next above.   10 *John.* 377.   The declarations proved were as to boundary, and were the declarations of the father of one of the parties who had died in possession.   In *Woodford* v. *Pain & Lake,* 15 *John.* 493, that court expressly decided, that the declarations of a former owner who is alive and may be examined, cannot be proved.   In a previous case, *Jackson* v. *Shearman,* 6 *John.* 19, this matter had been more considered and the court say :  " The acknowlegments of a party *as to title to real property* are generally a dangerous species of evidence, and though good to support a tenancy, or to satisfy doubts in case of possession, they ought not to be received as evidence of title.   This would be to counteract the beneficial purposes of the statute of frauds.   Title rests on written evidence, and not on the parol declarations of the parties."   And in *Pickering* v. *Stapler,* 5 *Serg. & Rawle,* 107, this court decided, that under the word appurtenances, a water right passed with a mill, though the owner when he was executing the deed declared he had not purchased the water right and was not selling it. I give no opinion however as to how far the right, as expressed in the deed may be affected by the declarations of a person while owner, because, as I view this case, that point does not arise, for by the very terms of the offer, *David Johnson,* whose declarations were offered to be proved, never was owner.   The offer was to prove that *David Johnson* never paid any part of the purchase money :  That he was a naked trustee for *Edward Johnson,* who bought and paid for the land.   Now, if this was so, and *David Johnson* always said so, his declarations were not " the declarations of an owner to be confided in, because he would not be supposed to speak against his own interest."   The offer went to prove that he never claimed any interest, and if so, he would at all times have been a good witness as to this property, in any case, and all cases, except where he was a party on record, and as such liable to costs, because his name was used on the record.   The court below so understood it, and the plaintiff and defendant here understood all this was to be proved by the declarations of *David Johnson.*   He is stated and admitted to be a competent witness, alive, and it is said within reach of the process of the court. As the counsel stated here in the court house, he had no interest, the plaintiff offers to prove he never had, why then must *F. Stong* who claimed an interest and was a party, be affected by *David's* declarations when not on oath ?   Why shall he be prevented from a right of cross-examination ?   Or why might not the plaintiff as well have proved the declarations of any other witness in the cause, who never had any interest in the matter trying ?

   The judge admitted that if *David Johnson* had informed *Stong* that he, *David,* had no interest, this might have been proved.   But if

*David* was a naked trustee, and *Edward* paid all the money, and if *Edward* had held a declaration of trust in his pocket, but not recorded, and *David* had sold to *Stong* who had no notice of the trust, and who had paid his money to *David,* or what is equivalent, had paid his money by *David's* directions to satisfy *David's* mortgage, *Stong* would be protected, at least to the extent of the money paid, against *Edward* and all claiming through him. *Lazarus* v. *Bryson,* 3 *Binn.* 54. *Peebles* v. *Reading,* 8 *Serg. & Rawle,* 484. If then *David Johnson* was a trustee, and never had any interest, and never claimed any, and was alive and could be had, his declarations were not evidence, and although he was a trustee, yet if *F. Stong* did not know it, and bought and paid his money without notice, to prove *David* a trustee would not affect him; and clearly, what ought not to have weight in deciding a cause, what may mislead a jury and induce them to decide against law, but what cannot avail the party offering it unless the law is disregarded—ought not to go to a jury.

Believing then the law to have been settled in this state by *Buchanan* v. *Moore,* 10 *Serg. & Rawle,* 275, and so considered by the profession, and by the several courts of Common Pleas as well as the one which tried this cause, I would not lightly change, but, on full reflection, I believe, it was then settled on principle, and ought not to be changed. And that if it is in any case to be modified, this is not such a case; for the title of the plaintiff depended on facts and recorded deeds, and could not be affected by parol declarations of any prior owner, unless he was induced to purchase by such declarations, or unless they gave notice of something affecting the title; but in the latter case notice to a stranger was not notice to the plaintiff. The court admitted declarations to the plaintiff, rejected parol declarations to others, and, I think, rightly, whether the former owner was dead or alive, unless they went to prove boundary in the sense I have stated, or pedigree or custom; and further, that where such declarations can be proved, it is only when the person who used them was owner when he used them, and is dead, or out of the reach of the process of the court, or interested.

KENNEDY, J.—In support of the opinion of the court below, the statute against frauds and perjuries has been called in, and the case of *Church* v. *Church,* 4 *Yeates,* 280, cited, where it was decided, that the declarations of the grantee made after the execution of the deed, " that she had paid no part of the £800 mentioned in the deed as the consideration, but that she held it in trust for the family;" could not be received in evidence, because, as the court said, " it would militate against the act of frauds and perjuries; the greatest dangers would ensue; that there was no *resulting trust* there." From which we must necessarily infer, that if the declarations of the grantee had been such as tended to prove a *resulting trust,* they would, in the opinion of the court, have been admissible. If then the declarations of *David Johnson,* which the plaintiffs in error offered to give in

evidence, tend to prove a *resulting trust,* the case of *Church* v. *Church* is an authority against the opinion of the court below. A resulting trust in land is such an interest or estate as arises and passes by operation of law, which by the express terms of the act against frauds and perjuries is excepted from its operation. To show what is meant by a *resulting trust,* how it is created, and that the declarations of *David Johnson* offered in evidence, went directly to establish such trust, 1 refer to what is said by Mr. Justice DUNCAN in *Wither's Appeal,* 14 *Serg. & Rawle,* 193. " Trusts," says he, " arising by act or operation of law, are when trust money has been laid out in lands, or where *one pays the money* and the *conveyance is made to another.* These, and cases falling within the same reason, are the only cases of *resulting trusts* by act and operation of law, which are within the exception in the act of assembly," and then he refers to *Wallace* v. *Duffield,* 2 *Serg. & Rawle,* 521, and *Stiner* v. *Stiner,* 5 *Johns. Ch. Rep.* 1, which see. From this it is obvious that the declarations of *David Johnson* established and met the case of a *resulting trust* exactly. They went to prove that although the conveyance was made to himself, yet the purchase money was paid by *Edward,* and thus a trust in favour of *Edward resulted to Edward Johnson by* " *act and operation of law,*" and of course the act against frauds and perjuries interposed no objection to the admission of the testimony. See also *German* v. *Gabbald,* 3 *Binn.* 304, *Peebles* v. *Reading,* 8 *Serg. & Rawle,* 492, in addition to the above authorities, which I quote merely to shew that what is properly called a *resulting trust* may be established by verbal testimony, without intending to give my assent to any thing that is said in these cases about *other* trusts being created and passed without writing.

It is also argued that the declarations of *David Johnson* were rightly rejected upon the principle that they were not made upon *oath* or *affirmation,* nor yet in the presence and hearing of the adverse party, but made in his absence when no opportunity was afforded of a reply, much less of a cross-examination, and as *David Johnson* was within the jurisdiction of the court, and was a competent witness, he might have been produced to testify to the facts, which would have been better evidence than his declarations or admissions. And in support of this, *Buchanan* and others v. *Moore,* 10 *Serg. & Rawle,* 281, is cited. There the late Chief Justice TILGHMAN delivered the opinion of this court, in which he says " the sixth exception was to part of the testimony of *Matthew Woodburn* a witness for the defendants, which the court rejected. *Woodburn* was describing the boundaries of the defendant's land, and mentioned a certain line as having been *shown to him by William Appleby who was living* at the time of the trial. The rule is, that in cases of boundary the declarations of *deceased persons* are evidence. The law on this subject is accurately stated in 1 *Phill. Evi.* 182 (*New York ed.* by *Dunlop*) where the general rule is given with the exceptions; and in page 164 after citing a variety of cases, it is said, that in all the cases which have been

mentioned on this subject, the person who made the declarations was deceased at the time of the trial." Then the Chief Justice proceeds further to say, "there is great reason for the law being so held. Why should the declarations without *oath* be evidence? Why should the party against whom the evidence is offered be deprived of the opportunity of cross-examining the witness? In case of death there is a necessity. But while the witness is living, there is no pretence for dispensing with the general rule, which rejects all testimony except on *oath* and in the presence of, the parties to the suit." The decision of the court here was not only correct, but I am willing to admit that every thing said by the Chief Justice is likewise so. But it will be seen in the sequel, I think, that it is not applicable to the case before us. The testimony in *Buchanan* v. *Moore* was purely of *hearsay* character, with regard to which the general rule is well settled, as there stated, that it cannot be received except in certain cases from necessity, when the facts offered to be proved from their very nature are incapable of the ordinary means of proof; such as questions of pedigree, character, prescription, custom, boundary, and the like. It is manifest that some of these matters from their very nature, and others from their antiquity, do not admit of the ordinary and direct means of proof by living witnesses: and hearsay would seem to be the next best evidence to which recourse must therefore be had. 1 *Stark. Evi.* 54. part I. *Bul. N. P.* by *Bridg.* 294, *b. n. (d).* But in the case before us the testimony offered and rejected, was not of that character, which in a technical and legal sense, comes under the denomination of *hearsay:* It comes under what is considered the declarations or admissions of the party to the suit or his privies, that is, those under whom he claims; in respect to which the general rule of law is just as well settled that they shall be received in evidence as that hearsay shall not. All a man's own declarations and acts, and also the declarations and acts of others to which he is *privy*, are evidence, so far as they afford any presumption against him, whether such declarations amount to an admission of any fact, or such acts and declarations of others to which he is *privy* afford any presumption or inference against him. 1 *Stark. Evi.* 51, part I. *sec.* 31. This rule is founded upon a principle of human nature that governs universally, and prevents every one from admitting or stating a fact against his own interest unless it be true, and hence it is considered quite as good a security for truth as the obligation of an oath upon a disinterested person. It is never looked upon as secondary evidence, but evidence of the highest character, of the very first degree in either civil or criminal cases. *Gilb. Evi.* 123. *Philadelphia ed.* [137.] "The party's own confession of a crime is the *clearest proof* in the law." *Hardr.* 139. *Stone*, whose case is reported in *Dyer*, 214, *b.* 215, *a.* was convicted upon evidence of his own confessions, of murder, and hanged. The confessions of the party himself, which I do not understand to be denied, have always been considered good and admissible evidence of any fact admitted by them to be true, and may

(Gibblehouse and another *v.* Stong.)

be given in evidence to prove it, notwithstanding the confessions might be such as to show that twenty witnesses were present who could all testify to its existence or non existence, and who might all appear to be in the court house at the time when such confessions should happen to be offered in evidence against the party making them. And this rule of admitting the confessions or declarations of the party extends not only to the admission of them against himself, but against all who claim or derive their title from him; in other words, between whom and himself there is a *privity.* There are four species of privity : privity in blood, as between heir and ancestor ; privity in representation, as between testator and executor, or the intestate, and his administrators ; privity in law, as between the commonwealth by escheat and the person dying last seised without blood or privity of estate ; and privity in estate as between the donor and the donee, lessor and the lessee, vendor and the vendee, assignor and the assignee, &c. *Co. Lit.* 271. 4 *Co.* 123-4.

Mr. *Starkie* in his Treatise on Evidence, page 48, part II. says, that an admission by the owner is sometimes evidence against one who claims to hold through him, and refers to *Ivat* v. *Finch*, 1 *Taunt.* 141, and *Walker* v. *Broadstock*, 1 *Esp. Ca.* 458. In the first of these cases the declarations of a Mrs. *Watson*, a former owner of the property, which consisted of three mares, made by her while in possession of the mares, were held to be admissible evidence to show that she had transferred and parted with her right to them. It is true that she was dead, and therefore could not be produced as a witness, but from the opinion of the court it is evident that that circumstance formed even no part of the ground upon which her declarations were decided to be competent evidence. For the court say, that " the admission supposed to have been made by Mrs. *Watson*, was against her own interest, and that had the action been between Mrs. *Watson* and the plaintiff, then her acknowledgment that the property belonged to him might clearly have been given in evidence, and *therefore it ought to have been received in that instance ;* because the right of the lord of the manor depends upon her title." The defendants in this case claimed under her as being the owner of the property at the time of her death, but her declarations were held to be admissible evidence to show that she had parted with her right to it before.

In the second case cited by Mr. *Starkie* in support of his last proposition mentioned above, the declarations of one who had been tenant in possession, and made during his possession, were given in evidence against the defendant who succeeded him in the possession of the estate, to show, that as tenant of it, he had no claim to the common *pur cause de vicinage* as appurtenant to the messuage which he had occupied; they were held to be competent evidence, and that too notwithstanding it appeared that this former tenant was *still living, and might have been produced as a witness.* The reasoning of the court in these two cases appears to me to establish the admissibility of the evidence upon *general principles,* and not upon

any particular or special attending circumstances which would render it competent " *sometimes*" only, as Mr. *Starkie* suggests.

The rule that when one claims title to property through another, he shall be affected in his right thereto by whatever would have affected the claim of that other, at or before he parted with and disposed of it, is more uniformly applied, and better understood, in cases of written declarations, or admissions made under the hand, or hand and seal, of the party, or have become matter of record against him. Accordingly Mr. *Starkie*, in his Treatise on Evidence, page 192, part II. *sec.* 61, lays down that " one who claims in *privity* with another is in the *same situation* with the latter as to any verdict or judgment either for or against him, whether he claims as *privy* in blood or estate, or as *privy* in law, so that the heir may give in evidence a verdict for his ancestor; and a verdict against the ancestor binds the heir. So a verdict against an intestate or testator binds his administrator or executor." And upon this same principle it is, that executors and administrators, as also devisees, legatees, heirs and next of kin, are all bound by the promises, whether *written* or verbal, of their respective testators or intestates, so far as they may have received estates from them that are liable, and the declarations and admissions of such testators and intestates are uniformly received *in* evidence against their devisees, legatees, heirs, and next of kin, so as to affect the estates which have passed to them.

Privies in estate, such as vendee and vendor, assignee and assignor, stand upon the same footing in this respect to each other that privies in blood do. I know of no distinction. That which is binding upon the vendor will generally be equally so upon his vendee; and whatever would have been admissible as evidence against the former, ought not only to be so against the latter, but ought to have the same effect too. Mr. *Starkie* in the same section, page 194, says, if a party after a verdict and judgment against him, assign his interest, the assignee is bound by the verdict, and for this reason, because " it would have been evidence against the assignor at the time of the transfer, and the substitute cannot be in a better condition than the principal." This principle is fully recognized by the Supreme Court of *Massachusetts*, in *Adams* v. *Barnes*, 17 *Mass. Rep.* 365, as between a mortgagor and his assignee. We shall presently see it recognised and applied in several cases where the declarations of the person under whom a party to the suit claimed, were admitted in evidence against him. I think it is difficult to perceive any good reason why the operation of the principle should not be the same in both cases, so far as to render the one as well as the other admissible evidence. The only difference between a verdict and judgment, and the written admissions of the party as evidence, is in the degree of credit to which they respectively are entitled; the first may be, and generally are, conclusive, whereas the latter may be controvertible; and the only difference again between written admissions or declarations, and those which are merely verbal, is, the uncertainty of the one and the greater

(Gibblehouse and another *v.* Stong.)

certainty of the other. For as to their admissibility they both stand upon the same footing, except as to matters of record, which on account of the high degree of credit to which they are entitled, being considered verity itself, are evidence *for* the party as well as *against* him.

It may perhaps be said that the rule of evidence in regard to the party named in the suit upon the record is different from that of any other person, because he cannot be called upon to give testimony, and therefore from necessity his admissions or declarations are received in evidence as the best that can be obtained under the existing circumstances, although but secondary. I have already shown from authority, and from reason too, as I believe, that such evidence in cases of the highest possible interest, even of life and death, as well as in those of property, is not considered secondary, but of the first and best character: and it will further appear that such cannot be the reason for admitting the declarations of the party named on the record, when we find it settled that the declarations or admissions of the party really interested, but whose name does not appear as such on the record, are also admissible in evidence. *Hanson* v. *Parker,* 1 *Wilson,* 257. And yet such interested party, as I apprehend, may be compelled as a witness, by the adverse party, to give testimony. 1 *Hall's Law Journal,* 221, Report of the opinion of the twelve Judges of England on the question whether a witness may be compelled to give evidence against his interest; *Baird* v. *Cochran,* 4 *Serg. & Rawle,* 397. *Nass* v. *Vanswearinger,* 7 *Serg. & Rawle,* 192. Lord ELLEN-BOROUGH has given the true reason of the rule for admitting the declarations of a party in evidence, 11 *East,* 584, where he says, it " is founded upon a reasonable presumption that no person will make any declaration against his interest, unless it be founded in truth." If true when made, and therefore receivable in evidence, his selling or disposing of the property afterwards cannot make his former declaration in respect to it untrue, nor furnish any reason, that I can perceive, which ought to derogate from its character as evidence. But I cannot avoid believing that as long as the great object of receiving testimony is to aid in and to promote the investigation of truth, the declarations or admissions of a vendor or assignor against his interest, made before the sale or assignment, may be more safely relied on and received in evidence against his vendee or assignee, than the testimony that would be given by such vendor or assignor himself, if the party claiming in opposition to his vendee or assignee, must be compelled to resort to him. Mr. *Starkie* in speaking of those declarations which compose part of the *res gestæ* being admitted in evidence, gives as a reason for it, that " they are the best evidence to prove the object for which they are admitted in evidence; since the party who made the declaration, *if he were competent as a witness,* would frequently be under a *temptation to give a false colouring* to the circumstance, when its tendency was known." 1 *Stark. Evid.* 49. part I. Does not this objection apply with peculiar force in favour

(Gibblehouse and another *v.* Stong.)

of admitting in evidence the declarations of a vendor made by him before sale against his vendee to invalidate the title, or to show that he held in trust for another ? Is it not most apparent from what we know by experience of human nature, that a vendor who had placed himself in such a situation would in many, if not most instances, swerve from the truth, in order to rescue himself from the imputation that was about to be made against his integrity ? His temptation to say the least of it, would frequently be very strong to give such a colouring to the whole transaction as he might think would present his own conduct in the most favourable point of view, without much regard to the truth of the case.

We have the decisions of the highest tribunals in several of our sister states in favour of the principle that such declarations or admissions are competent evidence, not only against the party who made them, but against all who stand in privity to, or claim under him.

The Supreme Court of *New York* in *Waring* v. *Warren,* 1 *John. Rep.* 343, decided that the declarations of a party holding adversely, are never received to support the title under which he claims; though they may be received when against it. And in conformity to this, the court there held that the declarations of Mrs. *Nocus* made before her marriage with *Waring,* the plaintiff in error, and while the goods were in her possession, stating that they belonged to *Warren* the defendant in error, but plaintiff in commencing the suit, and that they were not her own, were properly received in evidence, but that her declarations made at other times, before and after the marriage, could not be given in evidence by *Waring.* Also in the case of *Jackson* v. *Bard,* 4 *Johns. Rep.* 230. the same court decided, that the declarations of one *Smith,* made while in possession of the land in dispute, under a purchase of it by articles of agreement made with *Samuel Dickenson,* under whom both parties claimed, were admissible in evidence to postpone the claim of *Smith,* which was subsequently to his making the declarations, regularly transferred by him to *Peter Linzey,* and by *Linzey* to the defendant in the suit. Mr. Justice Thompson, who delivered the opinion of the court, says, " the declarations of *Smith,* made while in possession of the premises, as to his title, were admissible against *Smith,* and are also competent evidence against *all who claim under him.*" From the report of this case it does not appear whether *Smith* was living and within reach of the process of the court or not ; nor is this made the ground of the decision. It is put exclusively upon the ground that the declarations would have been good evidence against *Smith* himself, had he been the party to the suit, and the *privity* that existed between him and the defendant. It however must be admitted, that there has been a later decision of that court in *Hurd* v. *West,* 7 *Cowen,* 752, which militates against their former ; in which it was held, that the declarations or admissions of the vendor of personal property,

though made before the sale of it, were not evidence against the vendee. Mr. Justice Woodworth, who delivered the opinion of the court, assigns no other reason for it, than that, " where one is competent as a witness for the party, the latter cannot avail himself of the confessions of the former," and quotes *Alexander* v. *Mahon*, 11 *Johns. Rep.* 185, which decided merely that in an action of trover brought by the plaintiff, who, as sheriff, had taken the goods of one *Churchill* in execution under a *fieri facias*, which the defendant in the action of trover took as a distress for rent, which he claimed to be due to him from *Churchill*, that the acknowledgments of *Churchill* of his having become the tenant of the defendant by an agreement which he said was made between them about two months before the seizure, were not admissible in evidence. In the report of this case referred to, it does not appear when the acknowledgments of *Churchill* so offered to be given in evidence, were made: whether before or after the seizure, does not appear. If made subsequently to the seizure, as we may presume that they were, the decision is perfectly correct. The right of the sheriff, who was the plaintiff, commenced with the seizure of the goods, and to admit the subsequent declarations of the defendant in the execution to be given in evidence to defeat the sheriff's right under the seizure, would be to open a door to let in collusion and false pretenses, got up between the defendants in executions and third persons, for the purpose of defrauding and hindering creditors in the collection of their just debts. It is easy to be seen, that if such evidence were admitted to defeat the taking of property in execution by sheriffs it would be difficult to collect debts by execution.

There is also one decision of the Supreme Court of the state of *Massachusetts*, in *Appleton* v. *Boyd*, 7 *Mass. Rep.* 131, where it was not only held that the admissions of the mortgagee, although made before the assignment, could not be given in evidence against the assignee in a suit brought by him to enforce the mortgage against the mortgagor, but that the assignor could not be compelled to give evidence for the defendant against the assignee of the mortgage. Now we have just seen, that the only reason assigned by the court in *Hurd* v. *West* for rejecting such evidence was because it was secondary, as long as the assignor was a competent witness, and might be examined; but the decision in *Appleton* v. *Boyd* is also in direct opposition to that principle. I confess that I am unable to discover any established rule of evidence upon which it can be supported. It must be admitted on all hands that the admissions of the mortgagee, before he assigned, would have been good evidence against himself, in case he had brought a suit upon his mortgage against the mortgagor; if so, what reason in justice can there be for permitting him by an act of his own, without even the concurrence of the mortgagor, by assigning the mortgage, to set aside the testimony of the mortgagor, which was not only good and admissible in its nature, but amply sufficient to show that the mortgage was paid by him? As well might it be held

(Gibblehouse and another *v.* Stong.)

that a witness might render himself incompetent by an act of his own in becoming interested in the cause against the consent of the party producing him, which we know can not be.

Verbal admissions or declarations by the mortgagee that he has been paid the amount of his mortgage money by the mortgagor, are evidence that the fact is so; and the very best evidence too, when clearly established to have been deliberately made, because there is every reason derived from universal experience to believe that he would not have said so unless it were. true, no more than there is to believe that he would have given a written receipt for it, unless he had actually been paid, or that he would have executed and delivered a formal release without being satisfied in some way. It will surely not be pretended that a receipt or release given and executed by the mortgagee to the mortgagor, before the assignment, would not be admissible in evidence against his assignee; yet they are like verbal acknowledgments or declarations of having been paid or satisfied, that is, merely evidence of it, though as such it must be admitted more certain, and therefore generally entitled to more weight, in the scale of credibility, which however does not affect the question of competency in the least. Can it then be, that where a party has possessed himself, or has within his power, clear and abundant testimony of his having paid a debt, or of his having a good title to property, that he can be deprived of it without his consent by the will and act of him who is adverse in interest? To allow or permit one, by an act of his own, to set aside the testimony of another, who stands in opposition to his interest, would in effect in many cases be, to permit a man to make testimony for himself.

There is also a case between *Duckham* v. *Wallis*, 5 *Esp. Ca.* 252, which was tried before Lord Ellenborough, where the defendant who was sued as the acceptor of a bill, offered to give in evidence the acknowledgments of one *Evans*, who had been the holder of the bill, and had passed it by his indorsement after it become payable, made by him while he held the bill, that it had been discharged and settled in an account between him and the acceptor, but the court decided them to be inadmissible, because the fact, if so, might have been proved by *Evans* as the court said, and that what *Evans* had said was not the best evidence; that it would be making the declarations of a third person evidence to affect the plaintiff's title when that party is not on record, which was, I humbly conceive, a misapprehension of the nature of the testimony, and a misapplication of the rule that excludes hearsay evidence, and comes in direct collision with the decisions already noticed in the cases of *Ivat* v. *Finch* and *Walker* v. *Broadstock.*

It may also be perceived that the reasons given in support of those decisions, which have been made in opposition to the rule, that admissions shall not only be evidence against or binding upon those who made them, but against or upon all those claiming under them, are

(Gibblehouse and another *v.* Stong.)

not the same, nor yet reconcileable with each other in the different cases, which must lessen their authority.

Having noticed the most prominent of the decisions which have fallen in my way, and appear to have been made in violation of the rule for which I contend, I will now refer to a number, in addition to those already mentioned, which sustain the rule very fully.

In the case of *Prather* v. *Johnson*, 3 *Har.* & *J.* 487, the Court of Appeals, the highest tribunal in the state of *Maryland*, it was decided that either the oral or written declaration of the creditor that the surety had paid to him the amount of the debt, might be given in evidence by the surety against the principal debtor to support an action to recover the same: so in an action of trover for slaves, in which the plaintiff claimed title under a bill of sale from *F.* the former owner, and the defence was, that *F.* had afterwards manumitted them, it was held by the same court that the declarations of *F.* made between the date of the sale and the deed of manumission, " that he had sold the slaves to the person under whom the plaintiff claimed," were competent evidence for the plaintiff.   *Coale* v. *Harrington*, 7 *Har.* & *J.* 147.   And in the case of *Dorsey* v. *Dorsey's heirs*, 3 *Har.* & *J.* 426, the same court determined that the declarations of a man respecting his title to lands, made before he parted with his estate therein, were evidence against him, and *all claiming under him.*   See also, *Ricard* v. *Williams*, 7 *Wheaton*, 111.

There are also two decisions of the Supreme Court of errors in the state of *Connecticut* to the same effect, in which all the judges of that court concurred as to the admissibility of the evidence.   The first is, *Beers et al.* v. *Hawley*, 2 *Conn. Rep.* 467, and the second is *Norton* v. *Pettibone*, 7 *Conn. Rep.* 319, in which the question appears to have been pretty fully argued by counsel and to have received from the court a full and deliberate consideration.   This last case in its circumstances was not unlike the one now before us.   The plaintiff and the defendants all claimed title to the land in dispute from *Alva Marks* who was admitted by both parties at one time to have been the owner of it.   The plaintiff claimed title by virtue of the levy of an execution in his favour against *Alva Marks* made on the 11th of *March*, 1825.   The defendants claimed title, one as the widow and the other as the sole heir at law of *Alexander Pettibone*, deceased, whose title was by deed from *Zachariah Marks*, who derived his title by deed from *Alva Marks*, the debtor in the execution levied as stated.   The plaintiff insisted that this deed was made to defraud the creditors of *Alva Marks*, and therefore void.   To support this, he offered to prove by one *Frederick Lewis*, that *Zachariah Marks*, after the execution of the deed to him, and after he had taken actual possession of the premises under it, and previous to the deed to *Alexander Pettibone*, had acknowledged to him, that the deed from *Alva Marks* to him was without consideration, and made to defraud the creditors of the grantor.   The defendants objected to the admission of this evidence, but the judge before whom the cause was tried

(Gibblehouse and another *v.* Stong.)

admitted it. Upon motion afterwards for a new trial, by the defendants, against whom a verdict was given, the whole court affirmed the decision of the judge who tried the cause. Mr. Justice DAGGET, who is not only considered an able jurist, but a man of great force of mind, delivered the opinion of the court, in which he says, "declarations of a person while in possession of the premises against his title, are *always admissible,* not only against himself, but *against those who claim under him.*" From the report of this case it does not appear whether *Alexander Marks* was living and within the jurisdiction of the court, but it is manifest that that was not a circumstance which could have any bearing upon the question, or influence upon their decision of it, for the court say, that such declarations are *always,* that is, under any *circumstances whatsoever,* admissible, not only against him who made them, but against *all claiming under him.*

Mr. Justice STORY, who delivered the opinion of the Supreme Court of the United States in *Ricard* v. *Williams,* 7 *Wheat.* 111, in speaking of the declarations of a former owner and occupier of the land, the title to which was the matter in dispute says, "his declaration uniformly was, that he had a life estate only, and that upon his death they would descend to his son *Joseph.* Of the competency of this evidence to explain the nature of his possession and *title,* no doubt can reasonably be entertained."

In the next place it appears to me that we have a series of decisions of this court upon this question that are conclusive, and in which it has been resolved, that such declarations and admissions are evidence and as such may *always* be given against the party who made them, or those claiming under him, without regard to the party's being alive or dead, within or without the reach of the process of the court.

In *Andrew's less.* v. *Flemming,* 2 *Dall.* 93, the declarations of the husband of the defendant, under whom she held possession of the land, were given in evidence against her. It is true that the husband at the time of the trial was dead, but that circumstance is not mentioned, or even hinted at by the court as the ground of their decision for admitting the evidence. In *Stricker* v. *Todd,* 10 *Serg. & Rawle* 63, the declaration of a grantor of a mill, and of his son and heir at law, that all the water passed, made to those in possession under a subsequent grant of another tract of land, through which the water ran, were adjudged admissible evidence in a suit against one claiming under the latter, for obstructing the water. In the *Less.* of *Parker* v. *Gonsalus,* 1 *Serg. & Rawle,* 526, where the plaintiff read in evidence a title deed reciting that posssession of the land in dispute had been delivered to *A.* according to contract, he was then permitted by the court, in order to show that *A.* had no claim to the land, or the possession of it, to give in evidence his declarations that he had sold to another, who had sold to the plaintiff. This was ruled competent evidence without its being shown that *A.* could not have been produced as a witness. In *Bassler* v. *Niesly et. al.* 2 *Serg. & Rawle,* 352, the declarations of the party under whom the defendants claim-

ed and held the land in dispute, were held admissible evidence against them. It appeared in this case, that the party whose declarations were given in evidence was dead, but there the late Chief Justice TILGHMAN, who delivered the opinion of the court, would seem from the reason given for the decision, to exclude by implication strong as possible, all idea of the death of the party forming any ground of it ; for he says, " the defendant *claimed under Jacob Niesly, therefore Niesly's* confessions were evidence against him, as well as against *Niesly* himself," placing the admission of the declarations *entirely* and *exclusively* upon the ground of *privity* which is no doubt the true one. In the next case, *Weidman* v. *Kohr*, a decision to the same effect is expressly placed upon this ground, 4 *Serg. & Rawle*, 174. The declaration of the person from whom the plaintiff derived his title to the land in dispute, made before he disposed of his right, which arose under a warrant and survey, that his warrant and survey did not cover the bond in dispute, was held to be admissible in evidence against the plaintiff. From the report of the case it does not appear whether the party whose declaration was given in evidence was alive or dead, within or without the jurisdiction of the court at the time; but the court say, " there can be no doubt but such declarations are evidence. Nothing is *stronger* than the *confessions* of the party interested against himself, and the *privity* between that party and the plaintiff *renders* his confessions evidence against the plaintiff." Here it is observable that the court consider this evidence of a primary character, and not secondary, for they say, " *nothing is stronger.*" And for that reason, and on account of the *privity* that existed, they held it admissible. And in *Kellogg assignee &c.* v. *Krauser*, 14 *Serg. & Rawle*, 137, the acknowledgment of the assignor of a judgment bond made a few days before he assigned it, that he had received from the defendant or obligor, three hundred dollars, in consideration of which he had agreed not to enter up judgment upon the bond, was adjudged to be admissible evidence against the assignee, and from the report of the case there is no reason to believe that the assignor could not have been produced as a witness. It is certain that that does not appear to have been the ground upon which it was decided to be admisssible.

The declarations of the supposed grantor in the case of *Bartlet* v. *Delprat, et. al.* 4 *Mass. Rep.* 702, which has been cited by the counsel for the defendant in error were made after the date of the deed, and therefore very properly held not admissible. And for the same reason the same court held the declarations of the grantor, in the case of *Clarke* v. *White*, 12 *Mass. Rep.* 440-1, inadmissible to defeat his deed.

In support of the decision of the court below in the case before us, the general rule has been invoked, that parol evidence is not to be received to contradict, alter, add to, or diminish a written instrument. I am very willing to admit the existence of this rule, as well as the expediency of it. Indeed I consider it a matter of regret that it has

not been more strictly adhered to in this state, than perhaps will be found upon examination of all our decisions on this subject. But then, there are exceptions to the rule as old as it is itself. For instance, when the instrument, through *fraud* or *mistake*, has been made different upon its face from what was intended by the parties, parol evidence is admissible to prove such fraud or mistake. *Moore* v. *Hays*, 1 *Johns. Ch. Rep.* 343. *Stevens* v. *Cooper, Ibid*, 429. *Walker* v. *Walker*, 2 *Atk.* 99. *Ramsbottom* v. *Gorden*, 1 *Ves. & Bea.* 165. 1 *Fonb. Eq.* 169, 170. [200] and note. *Lansatt's Ed.* *Jones* v. *Strahan*, 3 *Atk.* 388-9. So parol evidence has always been received to establish a *resulting trust*, and the declarations of the grantee, made while invested with the legal estate, have been admitted in evidence to show the trust. *Gregory's Less.* v. *Setter*, 1 *Dall.* 193. *German* v. *Gabbald*, 3 *Binn.* 302. *Wallace* v. *Duffield*, 2 *Serg. & Rawle*, 521. *Peebles* v. *Reading*, 8 *Serg. & Rawle*, 492. *Wither's appeal*, 14 *Serg. & Rawle*, 185. 1 *Johns. Ch. Rep.* 582. *Botsford* v. *Burr*, 2 *Johns. Ch. Rep.* 409. The declarations of *David Johnson* which were offered in evidence, went most clearly to shew a *resulting trust*, and were therefore within one of the exceptions at least to the general rule, as also within the exception expressly made in the act of assembly against frauds and perjuries.

The case of *McWilliams* v. *Martin*, 12 *Serg. & Rawle*, 269, which was cited by the counsel for the defendant in error in argument on this point, does not afford any support, for the declarations of the grantor offered in evidence in that case, did not go to prove either trust or fraud or mistake, but to show that the intention of the grantor was different from what it appeared to be by a legal construction of this deed, and thus to vary the effect and operation of the deed accordingly, which to have admitted would certainly have been in opposition to the general rule. The courts are to expound and to decide upon the legal effect and operation of written instruments; and although in doing so they are to be governed by what shall appear to have been the intention of the parties so far as consistent with the principles and policy of the law, yet that intention must be collected from the terms of the instrument itself, and not from evidence *aliunde* ; *Lowfield* v. *Stoneham*, 2 *Stra.* 1261. *Cambridge* v. *Rous*, 8 *Ves.* 22. Hence the testimony of the party himself to the same effect as his declarations, could not have been admitted, had he been produced as a witness for that purpose in court.

Again it is said, that *Stong* was a *bona fide* purchaser of the property in dispute, for a valuable consideration, without notice, and that therefore the declarations of *David Johnson* were rightly rejected, unless the defendants below had at the same time apprized the court of their intention to give further evidence, showing that the plaintiff below had notice at the time that he accepted of the deed of conveyance from *David Johnson*, that he was only a trustee for *Edward Johnson*. It may be observed as very certain, from the reason given by the court below for rejecting the evidence, that this

view of the matter, or objection, did not present itself to them.   If it
had, and the court had mentioned it, the counsel for the defendants
below might perhaps have removed it at once, by informing the
court that such was their intention, and that they were fully prepared
to do it, but that they must in the natural and necessary course of
things give evidence first of the trust, and show that it existed before
they could prove notice of it to the plaintiff below.   But it appears
to me that this objection could not with propriety have been taken,
in any case, at such a stage of the proceeding, unless the party offer-
ing evidence of a *trust* with a view to defeat the title of one who
claimed to be a *bona fide* purchaser of real estate from the trustee
without notice of the trust for a valuable consideration, were to admit
that he could give no evidence of *notice*; without this the court has no
right to take it for granted or conceded that no evidence of notice is in
tended to be given or *can be given*, for the court may as well found the
rejection of the evidence offered to prove the trust upon the one as
upon the other.   As long as the defendants below continued to give
or offer to give evidence of facts or matters *relevant* to the issue in
their natural order, and which evidence was *competent* to be received
in proof of such facts or matters, it would have been error in the court
to have arrested their progress.   Now as the defendants below claimed
the land in dispute under a sale made of it in a due course of law,
as the property of *Edward Johnson*, for the payment of his debts, it
became all important for their defence to show that *Edward Johnson*
was the owner of the land either in law or in equity ; surely then, as
the testimony offered tended to prove this latter state of things, it was
*relevant*, and as to the *competency* of it, that has been shown already.
As to the time again, at which it was offered, it is clear that it could
not have been offered at any other ; or at least it was necessary to
give evidence of the existence of the trust before notice could be
proved of it, as it would be impossible to prove notice of that which
did not appear to have any being.

But to say that the declarations of *David Johnson* were offered in
evidence to defeat the title of a *bona fide* purchaser without notice,
for a valuable consideration, appears to me to be assuming a fact ;
for I do think that the evidence given and contained in the paper
book, affords very slight, if any, support for it.   From this evidence
it does not appear, that *Frederick Stong*, the plaintiff below, made
any bargain or contract at all with *David Johnson*, who was invested
with the legal title to the property.   The only agreement to which
he appears to have been a party, was made with *Edward Johnson* and
*Samuel Slingluff*, who held a mortgage upon one of the lots of ground
containing three quarters of an acre.   *Slingluff* always considered
*Edward Johnson* the owner of the ground, although he had made a
conveyance of it to *David*.   When he wanted payment for it, he ap-
plied to *Edward* not *David*, and from the testimony, *Frederick Stong*,
who was the brother in law of *Edward*, would seem to have made
the arrangement with *Edward* under which he got the title, and that

*Edward* got *David* to execute the deed of conveyance for the lands in dispute to *Frederick Stong.* The whole of this property was purchased by *Edward Johnson* at three hundred and forty pounds, of which, from the testimony, it appears, that *Edward* paid two hundred and forty pounds, and the remaining one hundred pounds was paid by the hands of *Frederick Stong* the plaintiff below; but from *Samuel Slingluff's* testimony, there is some reason perhaps to suspect, that this one hundred pounds, or a part of it at least, was money which the father of *Frederick Stong*, and of Mrs. *Edward Johnson*, had advanced to her husband *Edward Johnson*, as a portion of his estate which he designed for his daughter. *David Johnson* never paid any thing, and never appeared to have made any claim to the land, or any part of it. It appeared to have been occupied from 1811, when it was first purchased by *Edward Johnson*, until about 1827, when he was turned out of possession by *John Brandt*, one of the defendants below, who recovered it in an action of ejectment brought by him after he purchased it at the sheriff's sale in *November* 1825. Indeed it appeared pretty fully that *David* never was considered any thing but a trustee. Charity might suppose, that he got the deed of conveyance made to himself for the lot bought of *Slingluff*, containing three quarters of an acre, to indemnify him against the payment of part of the purchase money, as he had become *Edward's* surety to pay it; but why the deed of conveyance for the five acres bought and paid for by *Edward* himself from *Samuel Ashmead* was made to *David Johnson* also, it is difficult to imagine, unless for the purpose of keeping it from the grasp of *Edward's* creditors. *Edward*, as appears from the testimony, paid ninety pounds for this five acres, and one hundred and fifty pounds out of the two hundred and fifty pounds to which the three quarter acre lot was reduced when *Slingluff* received the one hundred pounds from the hands of *Frederick Stong.* It also appeared, in addition to the money paid by *Edward* for the property, that he had built a barn and a loom-house on the lot bought of *Slingluff.* Yet an absolute conveyance was made to *Frederick Stong* for the whole of this property, who never paid more than one hundred pounds at the utmost for it, about one fourth of what it cost. Yet notwithstanding all this testimony having been given, which it appears to me a jury might very fairly have deemed sufficient to warrant them in deciding that *Frederick Stong* not only knew that *Edward Johnson* was the *cestui que use*, and *David Johnson* a mere trustee, but that there was collusion between *Frederick Stong* and his brother in law *Edward Johnson*, and *David Johnson*, in making a deed of conveyance for both the lots of ground to *Stong*, and that it was done for the purpose of keeping it all out of the reach of *Edward's* creditors. To say the least of it, the arrangement under which *Stong* claimed was suspicious, and was it for the court under such circumstances to undertake to withdraw the matter of fact from the jury, and to say that *Stong* was a *bona fide* purchaser of the property for a valuable consideration without notice,

and therefore they would not admit the declarations of *David Johnson* in evidence? It appears to me that the rejection of the testimony cannot be supported upon this ground, and that the judgment of the court below ought to be reversed and a *venire de novo* awarded.

Judgment reversed and a *venire facias de novo* awarded.