NEW-YORK,
October, 1818.

WOODARD
v.
PAINE.

WOODARD *against* PAINE and LAKE.

THIS was an action of tresspass, for taking and carrying away a pair of horses, waggon and harness. The cause was tried at the *Dutchess* circuit, in 1817.

The defendant, *Paine*, was a justice of peace in the county of *Dutchess*. In *July*, 1816, an action was brought before *Paine*, by one *Hannah Betts*, against the plaintiff in this suit, for an assault and battery. A written plea to the jurisdiction of the justice was interposed, and overruled ; and during the trial the counsel for *Woodard* strenuously objected to the justice proceeding in the cause, and stated to him that the judgment would be void, and all acting under it would be tresspassers. The justice, however, persevered, and *H. Betts* obtained a verdict and judgment for 15 dollars. An execution was isued thereon, and delivered to the defendant *Lake*, a constable, who seised the goods in question, but left them with the plaintiff until the time of sale, when they were purchased by *Hine*, for about 19 dollars. *Andrew Lake*, a witness on the part of the plaintiff, testified, that soon after *Hine* purchased the horses he sold them to *Daniel Lake* for 225 dollars, and that *Daniel Lake* sold them to the witness, for 227 dollars and 50 cents ; that the witness bought them for the plaintiff, and that the plaintiff gave the witness his note for 230 dollars, and also 2 dollars in cash, the difference of the price being intended, as the witness alleged, to compensate him for his trouble. This witness being pressed, on his cross-examination, was hesitating and incoherent in his answers, especially when questioned as to the reason why the plaintiff had paid him 2 dollars in cash.

Several witnesses were produced on the part of the defendants, to prove circumstances from which it might be inferred that *Hine* purchased as the agent of, and with money furnished by, the plaintiff ; as, that *Hine* who lived in the

*Where a justice of the peace tried an action for an assault and battery, and gave judgment for the plaintiff for 15 dollars, and issued execution thereon, under which the constable levied on and sold a pair of horses, waggon and harness ; in an action of tres-pass by the defendant against the justice and constable, in which he obtained a ver-dict for 270 dollars, the court refused to grant a new trial, although there was rea-son to believe that the justice had not acted maliciously, but under a mistake as to the extent of his jurisdic-tion, and there were strong circumstances to show that the party him-self had, through his a-gent, purcha-sed the goods sold under the execution, at a price about e-qual to the a-mount of the judgment a-gainst him, so that he could have sustained no greater in-jury than the amount of the judgment: but still the case*

admitted of doubt, and the question was fairly submitted to the jury.

The admissions and declarations of a person, who is himself a competent witness, cannot be given in evidence.

plaintiff's family, was very poor, and unable to pay the money which he had bid at the constable's sale; but there was no direct evidence to this effect. The counsel for the defendants offered to prove declarations of *Hine*, that he had been furnished by the plaintiff with money for the purpose of bidding for the horses, but the judge rejected the testimony. It also appeared that *Hine* had kept out of the way, to avoid being subpœnaed by the defendants, and that after he had been subpœnaed, he absented himself from the trial.

The judge charged the jury that the plaintiff was entitled to recover, as the justice had no jurisdiction in the cause which he tried, and therefore his judgment was void, and all acting under it were trespassers. That if the jury believed that the justice had acted from ignorance merely, and that his intentions were good, they ought to give such damages only as would compensate the plaintiff for the actual loss that he had sustained : that to determine this point it would be proper for them to consider the manner in which the sale was made, and how the property was afterwards disposed of, and to determine whether there had been any collusion between the plaintiff and the purchaser, by which the plaintiff obtained his property again, without paying more than the amount of the judgment ; or, whether he had actually given the value of it : that the testimony of *Andrew Lake* was positive as to the fairness of the transaction, but it was opposed by many strong circumstances, and circumstances frequently afforded more satisfactory evidence than positive proof : that from the testimony he was inclined to think, that the sale of the horses was collusive, but this was a question for the decision of the jury; and that if the jury believed, from the testimony, that the defendants had acted from improper motives, and knowingly, they might give a verdict, not only for the actual damage sustained by the plaintiff, but in addition, for smart money, for the oppression and vexation which they had created.

The jury found a verdict for the plaintiff for two hundred and seventy dollars, which was about the value of the property in question.

*Swift,* for the defendants, now moved to set aside the ver-

dict and for a new trial. 1. Because proper testimony had been rejected. 2. Because the verdict was against evidence. 3. For the misdirection of the judge. He contended, that the evidence of the declarations of *Hine* ought to have been admitted. If he was an agent of the plaintiff, it was, no doubt, admissible ; (*Mott* v. *Kip,* 10 *Johns. Rep.* 478.) but if he was not, yet the manner in which he took possession of the property, his declaration at the time, and the character in which he acted, were part of the *res gesta,* and ought to have been received in evidence. (*Waring* v. *Warren,* 1 *Johns. Rep.* 340. 4 *Johns. Rep.* 230. 1 *Johns. Rep.* 159.)

2. The true measure of damages is what the plaintiff actually lost ; which was 19 dollars, and no more.

*Heaker* and *P. Ruggles,* contra, insisted, that the evidence of the declarations of *Hine* was properly rejected. Though in some cases, in ejectment, evidence of the declarations of a tenant has been received, yet it has been only to satisfy doubts as to the character of the possession under the circumstances, and never as to the title. The declarations admitted were, in some degree, against the interest of the person making them. (*Phillips' Ev.* 182. and note (*a.*) 6 *Johns. Rep.* 19—21.)

It is, however, regarded as a dangerous species of evidence, and the admission of it is an exception to the general rule.

The counsel next went into examination and discussion of the facts, to show that the verdict was supported by the evidence.

*Per Curiam.* The motion for a new trial in this case must be denied. From the nature of the cause, and the testimony that was given, there was room for an honest difference of opinion as to the conduct of the defendants, and as to the damages sustained by the plaintiff. We are inclined to think that the better conclusion is, that the magistrate acted under an honest and real impression that he had jurisdiction of the case before him. The testimony is pretty strong to show that the property was purchased in, under the constable's sale, for the benefit of the plaintiff, so that he has only sustained damages to the amount of the

NEW-YORK, judgment against him. But the testimony on both these
October, 1818. questions might well be considered doubtful; it depended

very much on the credibility of witnesses, and it was fairly
submitted to the jury; and we cannot say that they have so
much erred as to warrant us in interfering and setting aside
the verdict.

The declarations and confessions of *Hine* were properly
excluded. He was a competent witness, and his confes-
sions could not be received in evidence. There was no di-
rect proof that he was the plaintiff's agent, or acted in his
behalf. Upon the whole, although the damages are higher
than we think they ought to have been, yet, as it is an ac-
tion sounding in tort, the verdict must stand.

Motion denied